In the Matter of BROOKLYN HOSPITAL et al., Appellants, against MARY DONLON, as Chairman of the Workmen's Compensation Board of the State of New York, Respondent.

Argued January 12, 1956; decided February 16, 1956.

*Emanuel Hayt* for appellants. I. The legislative background of the 1935 amendments to the Workmen's Compensation Law irrefutably indicates that the statutory provisions were directed at the control of medical abuses and fees of physicians. (*People* v. *Ryan,* 274 N. Y. 149; *Woollcott* v. *Shubert,* 217 N. Y. 212.) II. The Legislature in the 1935 amendments specifically excluded " hospital service " from the provisions of section 13-a authorizing the Chairman of the Workmen's Compensation Board to promulgate a fee schedule for " medical treatment and care " by physicians. (*Bogartz* v. *Astor,* 182 Misc. 214, 268 App. Div. 795, 293 N. Y. 763, 293 N. Y. 563; *Travelers Ins. Co.* v. *Padula Co.,* 224 N. Y. 397; *Palmer* v. *Van Santvoord,* 153 N. Y. 612; *Riggs* v. *Palmer,* 115 N. Y. 506; *Matter of Thomas,* 216 N. Y. 426; *Lester* v. *Otis Elevator Co.,* 90 Misc. 649, 169 App. Div. 613; *People ex rel. Scharff* v. *Frost,* 198 N. Y. 110.) III. The rule of *ejusdem generis* excludes " hospital service " from the phrase " such medical treatment and care ". (*People* v. *Weinstein,* 202 Misc. 171; *St. Luke's Hosp.* v. *Godet,* 171 Misc. 7; *Matter of Tonis* v. *Board of Regents,* 295 N. Y. 286; *Matter*

of *Watson*, 144 Misc. 213; *Matter of Clonan*, 176 Misc. 557; *Matter of Stradar* v. *Stern Bros.*, 184 App. Div. 700; *O'Brien* v. *East Riv. Bridge Co.*, 161 N. Y. 539.) IV. The Attorney-General of New York State has ruled that section 13-a of the Workmen's Compensation Law, as amended in 1935, does not authorize the Chairman to establish a schedule of charges for hospital services. V. No legislation enacted subsequent to the 1935 amendments has given authority to the Chairman to promulgate a hospital rate schedule. (*Matter of Quinby* v. *Public Service Comm.*, 223 N. Y. 244; *Town of Mamaroneck* v. *New York Interurban Water Co.*, 126 Misc. 382.) VI. The statute should be so construed as not to cause " objectionable results ". (*People* v. *Ryan*, 274 N. Y. 149; *Wilmerding* v. *Bonaschi*, 166 Misc. 140; *Szold* v. *Outlet Embroidery Supply Co.*, 274 N. Y. 271; *Matter of Messenger* v. *Chemung Foundry Corp.*, 234 App. Div. 810.) VII. Appellants are aggrieved persons within the purview of article 78 of the Civil Practice Act, with concomitant right to challenge the validity of the Chairman's order. (*Bullock* v. *Cooley*, 225 N. Y. 566; *Kings Co. Lighting Co.* v. *City of New York*, 176 App. Div. 175; *City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543; *Federation of Labor* v. *McAdory*, 325 U. S. 450; *Perkins* v. *Lukens Steel Co.*, 310 U. S. 113; *Ivory* v. *Edwards*, 278 App. Div. 359, 304 N. Y. 949; *Connelly* v. *Department of Agric. & Markets*, 162 Misc. 73; *Anti-Fascist Comm.* v. *McGrath*, 341 U. S. 123; *Columbia System* v. *United States*, 316 U. S. 407; *Matter of Kuhn* v. *Curran*, 294 N. Y. 207; *Wardrop Co.* v. *Fairfield Gardens*, 237 App. Div. 605; *Mayflower Farms* v. *Ten Eyck*, 297 U. S. 266.)

*Jacob K. Javits*, Attorney-General (*Abe Wagman*, *James O. Moore, Jr.*, and *William Alpert* of counsel), for respondent. I. Respondent acted wholly within the scope of her statutory authority. (*Matter of Cook* v. *New York Central R. R. Co.*, 296 N. Y. 576; *Bethlehem Shipbuilding Corp.* v. *Monahan*, 62 F. 2d 299; *Matter of Rodriguez* v. *New York Dock Co.*, 288 N. Y. 710; *Matter of Dorfman* v. *Levine*, 260 N. Y. 665; *Szold* v. *Outlet Embroidery Supply Co.*, 274 N. Y. 271; *Meltzer* v. *Koenigsberg*, 302 N. Y. 523; *Matter of Di Brizzi* [*Proskauer*], 303 N. Y. 206; *Matter of Daniman* v. *Board of Educ. of City of N. Y.*, 306 N. Y. 532; *Puerto Rico* v. *Shell Co.*, 302 U. S. 253; *Barr* v. *United*

*States,* 324 U. S. 83.) II. There is no substance to appellants' contention that the administrative order brings about "objectionable results".

DESMOND, J. In this article 78, Civil Practice Act, proceeding the petitioners are Brooklyn Hospital, a nonprofit charitable hospital in the Borough of Brooklyn, and Hospital Association of New York State, a domestic membership corporation formed by 277 member hospitals, some " voluntary " and some operated by governmental agencies. The proceeding was brought to prevent the enforcement of an order made by respondent Donlon, as Chairman of the New York State Workmen's Compensation Board, which order, so far as pertinent, fixes in workmen's compensation cases a $14 per day fee for bed, board, routine nursing, ordinary dressings and drugs in hospitals with 50 or more beds and a fee of $11.25 per day for similar services and accommodations in hospitals with 49 beds or less. The order further directs that: "The total charge for all services rendered in any case shall not exceed the total charge for like services which would be made to a self-paying patient in a non-compensation case at the minimum established fees for the particular hospital, in the event the hospital fees in such non-compensation cases are lower than the fees provided by this schedule." The parties agree that the effect of this order is to fix a $14 daily fee per bed in a semiprivate room in a non-public hospital ($11.25 per day in smaller hospitals) with the proviso that the per diem charge per bed for any workmen's compensation case in any private hospital shall not be higher than the hospital's regularly established minimum fees for such accommodations when furnished to a self-paying patient. Fundamentally, the complaint of the private hospital against this mandate is that it compels the hospitals to furnish hospital accommodations in workmen's compensation cases at prices no higher than those that the hospitals themselves have established for self-paying patients. This means, according to the private hospitals, that insurance companies and self-insured employers in workmen's compensation cases not only get the benefit of minimum fees which have been fixed below cost for needy people but, so the private hospitals say, the order means also that the deficit resulting from their charitable practices must be made

up by public giving to the hospitals, all to the benefit of the insurers and self-insured employers. The legal propositions advanced by petitioners against the validity of this order are two: first, that there is no statutory authority whatever for the fixation by the Chairman of any fees for hospital services and, second, that if the court should find such authority to exist, the terms of this particular order are arbitrary. Actually, that second point can hardly be said to be argued at all in appellants' brief. The reason for that scanty treatment is, presumably, that appellants have to admit that if power existed for the making of any such hospital fee schedule, there would be a presumption that the Chairman had not acted without any basis whatever. Appellants would thus have the burden, which they have not met, of proving affirmatively that the fees as fixed are arbitrary. This appeal, therefore, really deals with one question only, that is, as to whether any statute authorizes the making by the Chairman of a schedule of charges for private hospitals in workmen's compensation cases. Both courts below held that the power existed, but there was one dissent at the Appellate Division, thus entitling petitioners to an appeal here as of right. Special Term had held there was statutory authority for an order like this in subdivision (a) of section 13 of the Workmen's Compensation Law.

When petitioners appealed to the Appellate Division, First Department, the majority wrote no opinion but the brief dissenting memorandum said that subdivision (a) gave the Chairman no such rate-fixing authority and that if this statute's language left any doubt as to the authority given, that doubt is removed by a study of the history of the law. It is undisputed, of course, that the Chairman has no such power unless it be given her by an express statute. We are reversing the orders below since we are in entire agreement with the dissenting view in the Appellate Division that not only does subdivision (a) of section 13 of the act not confer such a power in terms but there is every reason to conclude that the Legislature never intended to grant any such power.

If such a rate-scheduling power appears in any statute, it must be found in the second paragraph of subdivision (a) of section 13 which does not contain the word "hospital" or any language suggesting to our minds that it is intended to refer to

hospital services. Except for the last sentence, which has nothing to do with our question, that second paragraph of subdivision (a) of section 13 has remained unchanged since it was first enacted by the Legislature by chapter 258 of the Laws of 1935. It directs the Chairman to prepare and establish a schedule, either for the State or for limited parts of the State, " of minimum charges and fees for such medical treatment and care ". The second sentence of that second paragraph directs the Chairman before preparing such a schedule or schedules to ask the president of the Medical Society of the State of New York for a report as to the charges deemed by that society to be fair and adequate for the types of medical care to be rendered in compensation cases, the Chairman being further directed to give consideration to the views of other interested parties. The third sentence of that second paragraph says that the amounts paid by an employer for such treatment and services in compensation cases shall not be less than the charges fixed in such a schedule. The fourth sentence permits the payment of higher fees by agreement but says that " no physician rendering medical treatment or care may receive payment in any higher amount unless such increased amount has been authorized by the employer, or by decision as provided in section thirteen-g " of the act. Thus, the fees which the Chairman may fix by schedule are specified as those for " such medical treatment and care ". Hospitals and hospital services are nowhere mentioned, it is the president of the State Medical Society who is to be consulted, and the only prohibition against charging higher fees is against the " physician ". All of this on its face means to us that the schedule-fixing power was intended to apply to the fees of physicians only. The first paragraph of subdivision (a) of section 13, that is, the paragraph just ahead of the schedule-fixing authorization paragraph, requires the employer to provide necessary " medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches and apparatus ". The next sentence of that first paragraph makes the employer liable for those same expenses, again listing " hospital service ". Thus, when the statute wished to make clear that a statutory mandate included hospital charges it said so. When it came to authorizing a schedule of fees, the word " hospital " was omitted while the

word "medical" was left in and there were references to the president of the State Medical Society and to "physicians". Undoubtedly, this was the basis for an opinion by the Attorney-General given to the then Industrial Commissioner in December, 1936. That opinion of the Attorney-General points out that the 1935 legislation, referred to above and part of which is subdivision (a) of section 13, was passed in response to a 1934 message of the Governor, that the message referred to abuses by physicians with no mention of hospitals, and that, since the 1935 amendment itself did not mention hospitals, the statute does not authorize the establishment of fees for hospitals as distinguished from fees for physicians. From the date of that opinion, so far as appears, down to the making of the order here under review in October, 1954, a period of nearly eighteen years, none of the successive officials heading the Workmen's Compensation Board ever attempted to establish any schedule of fees for hospitals.

Our attention is called to two reports made in 1932 (N. Y. Legis. Doc., 1932, No. 83) and 1934 (N. Y. Legis. Doc., 1934, No. 75), respectively, the first to Governor Roosevelt by the so-called Cullman Committee, and the second to Governor Lehman by the so-called Pool Committee. We find nothing in either report suggesting that there should be a grant of power to make schedules for hospital fees, although the Pool Committee did discuss at some length overcharges by physicians and the need for schedule-fixing powers to correct this. The Cullman Committee discussed various problems of hospitals but said nothing about scheduling hospital fees. The 1935 amendments were undoubtedly the direct result of suggestions made to the Legislature by Governor Lehman in 1934 and the second paragraph of subdivision (a) of section 13 is almost identical with the wording of a statute proposed by Governor Lehman, the changes being such as not to affect our question.

The Chairman argues that the phrase at the beginning of the second paragraph of subdivision (a), referring to a schedule for fees for "such medical treatment and care", refers back to similar language in the first paragraph. This is not persuasive since in the first paragraph, when the Legislature intended to cover hospital matters as well as medical matters, it used both the words "medical" and "hospital". The Chairman

says, correctly, that liability (of carriers and employers) for hospital as well as medical expenses was mandated by the act long before the 1935 amendment (*supra*), but that, we think, misses the point. The point is that when in 1935, pursuant to recommendation of the Governor and because of abuses reported to it, the Legislature took up the question of fee schedules, it referred to " medical " fees and, so it seems to us, made it plain that the reference was to physicians' charges. This is confirmed by the fact that the two reports above referred to, and the later message of Governor Lehman, discussed excessive fees by physicians but said nothing at all about excessive fees by hospitals. The Chairman calls to our attention that section 13-g of the act headed " Payment of bills for medical care " deals with physicians' bills and hospital bills and provides for arbitration procedures in case of disagreements as to any such bills. Those provisions were part of the same 1935 amendments accomplished by chapter 258 of that year but, here again, when the Legislature wished to cover both medical care charges and hospital charges, it said so in so many words.

The order appealed from should be reversed, and the prayer of the petition should be granted, vacating and setting aside the chairman's order of October 1, 1954, with costs in all courts.

CONWAY, Ch. J., FULD, FROESSEL, VAN VOORHIS and BURKE, JJ., concur; DYE, J., taking no part.

Order of Appellate Division reversed, with costs in all courts, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.